DAVID J. COHEN, ESQ.
California Bar No. 145748
djcohen@bayareacrimlaw.com
**BAY AREA CRIMINAL LAWYERS, P.C.**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900
Facsimile (415) 398-7500

NAYIB HASSAN, P. A., ESQ.
Florida Bar No. 20949
hassan@nhassanlaw.com
6175 NW 153rd St Ste 209
Miami Lakes, FL 33014-2435
Telephone: (305) 403-7323
Facsimile: (305) 403-1522

Attorneys for Defendant **Meinrad Kopp**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>    v.<br><br>MEINRAD KOPP,<br><br>                Defendant. | Case No. 6:17-cr-00159-PGB-DCI-1<br><br>**DR.   KOPP'S  SUPPLEMENTAL SENTENCING MEMORANDUM** |

## I.

## __INTRODUCTION__

Dr. Kopp has been sentenced by this Court once before. Initially subject to a

Guidelines range of 78-97 months, Dr. Kopp was and remains subject to an advisory

Guidelines range of 120 months, the mandatory minimum for his offense of conviction. *See* dkt. 50. Despite the government's request for a 20-year sentence and Dr. Kopp's request for the minimum 10-year sentence, this Court imposed a life sentence. Dkt. 66. That sentence was subsequently reversed, and judgment vacated. Dkt. 88. Dr. Kopp now appears before this Court for resentencing. The presentence report has not been revised, and the Court has not provided notice of any intent to again vary upward and impose a life sentence.[1] The Court has, however, permitted the filing of a supplemental sentencing memorandum. Dkt. 92.

Prior to his successful appeal, Dr. Kopp previously submitted a sentencing memorandum (dkt. 63) and response to the government's memorandum (dkt. 64). He does not aim to repeat the arguments and citations already submitted to, and considered by, this Court. He does not wish to belabor the points this Court has already heard, and he acknowledges this Court's reservations regarding the 10-year sentence originally requested. Instead of repeating his entreaty, Dr. Kopp intends the present memorandum to supplement his previous filings. Herein, he requests a sentence of 20 years, precisely the same as that requested by the government. *See* dkt. 124. This is the sentence the government reasonably contends is appropriate, and Dr. Kopp agrees with that recommendation. He contends herein (as the government does implicitly) that no higher sentence is warranted or permissible.

---

[1]  Although he acknowledges that the law of this Circuit does not require notice, Dr. Kopp hereby objects to and preserves his right to challenge any sentence, including a life, imposed by this Court that constitutes an upward variance from the applicable Guidelines range of 120 months, as this Court has given no notice of an intent to vary upward.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

## II.

### GIVEN THE DETERMINATE SENTENCES ROUTINELY IMPOSED UPON EQUALLY (OR FAR MORE) CULPABLE DEFENDANTS, 18 U.S.C. §3553(a)(6)'S CALL TO AVOID UNWARRANTED SENTENCING DISPARITIES PROHIBITS THE IMPOSITION OF A SENTENCE EXCEEDING 20 YEARS.

In a world as complex as this, no two cases are factually identical. Nevertheless, §3553(a) requires sentencing courts to consider similar (if not identical) cases and to avoid unwarranted sentencing disparities between similarly (if not identically) situated defendants. Given the determinate sentences that have been repeatedly imposed – both by this Court and otherwise, both within this district and without, both in high-profile cases and in those without media attention – Dr. Kopp posits that no sentence in excess of 20 years would adequately avert unjustified disparities between his case and those of similarly situated defendants. When this Court considers the sentences that have been routinely imposed upon far more culpable defendants, ones who have caused more significant suffering or proven to be repeat offenders, it is even more clear that a 20-year sentence is the highest that can reasonably be considered appropriate here.

Undoubtedly, this Court can point to distinctions between Dr. Kopp's case and every single one cited herein. Differences are inevitable. But to warrant a different sentence, those differences must also be meaningful, and they must justify the years (or, in the extreme case, a lifetime) of imprisonment that this Court imposes. Notwithstanding this Court's clearly expressed feelings regarding the depravity of Dr.

Kopp's conduct, it is indisputable that Dr. Kopp was not convicted of abusing, enticing, or even speaking to an actual minor. Dr. Kopp's offense has no victim and is inchoate. Dr. Kopp vociferously denies that he has ever sexually abused a minor, and he contends that there is no reliable evidence that he has done so (as discussed further herein, *infra*).

As a general matter, defendants sentenced for violations of §2422(b) receive far lower sentences than the 20-year sentence requested by both parties here. A statistical survey of the sentences imposed on §2422(b) defendants (including those convicted of multiple counts) between 2006 and 2018, as reported by the courts to the Sentencing Commission, shows that the national average sentence is 143 months. Ex. A. The average in this district is slightly higher, at 165 months. *Id*. The most common sentence imposed by far is the mandatory minimum of 120 months. *Id*. Dr. Kopp's requested sentence of 240 months, therefore, is significantly higher than the average.

More specifically, and separate and apart from those cases previously cited in Dr. Kopp's original sentencing memorandum, are the following instances of similar (or more egregious) conduct and corresponding sentences.

In this district, there are many instances of defendants convicted of more or similarly egregious violations of §2422(b) and given determinate sentences. These include:

- **Jonathan Prive** sexually assaulted a toddler once and planned to do so again.

In his chats, he discussed BDSM and the need to physically overcome the child's resistance. Child pornography was found on his computer. Prive was sentenced to 365 months. 6:14-cr-00033-JA-KRS at dkt. 27.

• **Charles Friedlander** planned to sexually abuse two minors, describing his intent to whip and beat them before raping them. His interest in such sexual abuse was documented to have gone on for at least three years. Torture implements were found in his car at the time of his arrest, and he lied about their use at his trial. Friedlander was sentenced to a within-Guidelines sentence of 360 months. 8:08-cr-00318-JDW-TGW at dkt. 304.

• **Louis Ruggiero** targeted a 15-year-old girl online and began a sexual relationship with her. *United States v. Ruggiero*, 791 F.3d 1281, 1283 (11th Cir. 2015). "A few months later," he responded to an online advertisement similar to the one in Dr. Kopp's case and traveled to meet the notional 13-year-old not long after. *Id*. at 1284. Ruggiero was sentenced to 240 months. 6:13-cr-00032-RBD-T_S at dkt. 114.

• **Erold Panopio** was sentenced to 235 months for sexually abusing two 15-year-old girls and then being caught in a sting operation enticing a notional 13-year-old. *United States v. Panopio*, 836 F. App'x 839, 840 (11th Cir. 2020).

• In a case somewhat similar to Dr. Kopp's, **Jon Stoune** "doggedly" pursued the sexual abuse of what he believed was a deaf 14-year-old; discussed BDSM, pain, punishment, and activities that "could best be described as tortuous [*sic*];" planned to record his abuse of the child; and brought "torture devices" (including clamps, a club,

a whip, a dog leash, a belt, a hooded mask, leather straps, and "metal bolt snap disks") to his planned meeting with the minor. 3:15-cr-00089-MMH-PDB at dkt. 91. Stoune was convicted of §2422(b) as well as two child pornography counts and was sentenced to 210 months.

- **Dennis Wilkerson** was sentenced to 210 months, the low end of the Guidelines, for two counts of §2422(b) arising from online sting operations mere months apart. *United States v. Wilkerson*, 702 F. App'x 843, 845-46 (11th Cir. 2017).

- **Mark Unrein** was sentenced to 151 months for counts of both §2422(b) and §2252(a)(4)(B) after responding to an online advertisement for sex with a 12-year-old and claiming to have had sex with another 12-year-old on a prior occasion. *United States v. Unrein*, 688 F. App'x 602, 605 (11th Cir. 2017).

- **Richard Crawford** was sentenced to 130 months after soliciting paid sex from a 12-year-old online and lying about the offense at trial. 6:18-cr-00043-RBD-DCI at dkt. 129.

- Many other defendants have been sentenced to the minimum of 120 months after being caught in sting operations similar to the one here. *See, e.g.*, *United States v. Allen*, 859 F. App'x 892 (11th Cir. 2021); *United States v. Malek*, No. 3:18-cr-162-J-39MCR, 2020 U.S. Dist. LEXIS 169434, at *3-4 (M.D. Fla. Sep. 15, 2020).

This Court has, itself, routinely sentenced §2422(b) offenders less harshly than Dr. Kopp was originally sentenced in this case. Examples include:

- **John Williams** was sentenced by this Court to 120 months after he, over the

span of 28 hours, responded to an advertisement for sex with a 14-year-old girl, exchanged photos, made plans to meet the child, and implied that he had abused children on prior occasions. Williams traveled to the notional minor's location with razors, vibrators, anal plugs, and nipple clamps; he then repeatedly lied to police during his interrogation. 6:13-cr-00026-PGB-T_S-1 at dkt. 229, 252.[2]

• **Rameshwer Satram** was sentenced by this Court to 120 months after he was caught in a similar sting operation; this Court did note that there was no evidence that Satram had engaged in such conduct previously. 6:18-cr-00106-PGB-DCI at dkt. 85.

• **Ronald Grocoff** was sentenced by this Court to 120 months after being arrested in a similar sting operation and attempting to purchase sex from a notional 12-year-old. 6:15-cr-00091-PGB-T_S-1 at dkt. 30.

• Just one month after Dr. Kopp was sentenced, this Court sentenced **Scott Foster** – who described at length his "grooming process" of a notional 12-year-old, traveled to meet with the child, and bragged about having similar experiences in the past – to 180 months. The single fact which this Court cited as differentiating Mr. Foster from Dr. Kopp is that Mr. Foster found his victim on Craigslist, rather than the dark web. 6:17-cr-00104-PGB-GJK at dkt. 80.

• **Thomas Peron** was sentenced by this Court to 210 months, a within-

---

[2] Mr. Williams was sentenced to the mandatory minimum 23 months before Dr. Kopp was sentenced and 23 months before this Court mused that it could not recall having ever imposed a 120-month sentence. *See* dkt. 77 at 57:6. This Court said it was imposing Williams' sentence in consideration of his age (69), yet opined at Dr. Kopp's sentencing that age is irrelevant. *Id.* at 67.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

Guidelines sentence. Peron was already a registered sex offender when he posted his own advertisement seeking children to abuse, took an Uber to meet a notional 9-year-old for sex, and stated that he was also working to coordinate the rape of another 6-year-old. 6:18-cr-00056-PGB-T_S at dkt. 59.

- **Thomas Rowland** was sentenced by this Court to 300 months, despite his case being virtually identical to Dr. Kopp's in every meaningful (aggravating) way. Rowland also engaged in chats with an undercover officer for months, flew to Florida from the tri-state area to meet the minor, discussed the use of restraints and bondage,[3] and claimed to have abused a child in the past. 6:19-cr-00160-PGB-LHP at dkt. 58.

- **Andrew Goldberg** was sentenced by this Court to 365 months for his convictions for both §2422(b) and §2252A(a)(2). Goldberg ran a series of child pornography distribution rings, traveled to molest two children under the age of 12, and admitted to having molested children in the past. 6:17-cr-00191-PGB-LHP at dkt. 62.

Elsewhere, many defendants convicted of §2422(b) who have indisputably engaged in more egregious behavior than Dr. Kopp have been sentenced to 20 years or less in prison. These include:

- **Adalberto Guardado** was sentenced to 200 months after using a ruse to obtain access to a 3-year-old girl whom he then molested; Guardado, who had a criminal

---

[3]  This Court addressed Dr. Kopp at Rowland's sentencing, saying Rowland's case was "not as severe as Mr. Kopp's case where his goal was exclusively to commit harm to this child." Dkt. 58 at 16:34. As addressed further *infra*, Dr. Kopp's goal was no different than Rowland's – to engage in sexual acts (though involving BDSM) with a willing minor.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

history, recorded the molestation of the toddler. 4:21-cr-00241-JSW [CANDC], at dkt. 37.

- **Nicholas Hayek** spent a month victimizing a ten-year-old girl, lied to law enforcement, lied again at trial, was convicted of both §2422(b) and several child pornography counts, and was sentenced to 204 months. 2:18-cr-00160-JRG-CRW [TNEDC] at dkt. 166.

- **Byron Montijo-Maysonet** arranged for the sexual assaults by him and his friend of two different middle schoolers on two different occasions, getting caught immediately after the second incident. He was sentenced to 198 months. *United States v. Montijo-Maysonet*, 974 F.3d 34, 37-39 (1st Cir. 2020).

- **Floyd Miller**, whose Guidelines range was 188-235 months, was sentenced to 164 months despite having created child pornography of his victim, targeted a loner, spoken to many other children, and taken a job at a youth shelter to increase his access to victims. 6:17-cr-00075-RAW [OKEDC] at dkt. 54.

- **Gar Goldberg**, who enticed and actually abused two children, was sentenced to 156 months. 9:13-cr-80082-KAM [FLSDC] at dkts. 1, 57.

- **James Brown** was caught in a sting operation like Dr. Kopp but, notably, offered to trade for sex his own daughter with the undercover officer's child; Brown was sentenced to 235 months. *United States v. Brown*, 526 F.3d 691, 697 (11th Cir. 2008).

- **Kenneth Chase** was likewise caught in a sting operation after he traveled to

meet an 11-year-old child for sex; unlike Dr. Kopp, Chase admitted that he would not be able to limit himself to willing sex acts and that the notional child's mother may have to stop him from forcing himself upon the child upon seeing her. 1:08-cr-00133-TWT-GGB [GANDC] at dkt. 89.

In many instances, defendants convicted of §2422(b) for conduct comparable to (or worse than) Dr. Kopp's have been sentenced to the mandatory minimum term of ten years, or close to it. These include:

• **Justimiano Diaz**, who had been deported from the U.S. at least once before, spent two weeks sending unwanted texts to a 13-year-old girl, soliciting nudes and driving to meet her for sex. 6:17-cr-00068-RAW [OKEDC], at dkt. 35.

• **Cory Day** victimized two different minors, pursuing one even after he blocked him and driving to meet the other for sex. 3:19-cr-00119-TAV-DCP [TNEDC] at dkt. 2.

• **William Ellis** was caught in a similar sting operation; Ellis, however, had a history of using the internet to communicate and exchange child pornography with other offenders. 2:19-cr-00190-RLJ-CRW [TNEDC] at dkt. 54.

• **Noel Macapagal** was sentenced to 121 months after making plans with an undercover officer to abuse three girls (ages 6, 9, and 11) and admitting in one conversation to having previously abused a separate 14-year-old. 1:19-cr-00080-LEK [HIDC], at dkt. 130.

These are the sentences that are routinely imposed for defendants convicted of

§2422(b). These cases are not particularly old, and they are not isolated instances of unusual factual circumstances. Rather, this compilation of cases represents the manner in which violations of §2422(b) are handled. To impose upon Dr. Kopp a sentence far in excess of those imposed on similarly situated much more egregious offenders is to subject Dr. Kopp not to a personalized sentence, but to escalated punishment out of nothing more than dumb luck. Frankly, even if this Court were to focus singularly on the most aggravating factors in this case with no heed to the mitigating ones, undersigned counsel can conceive of no reasonable explanation why it is appropriate to punish Dr. Kopp more severely than Charles Friedlander, Jon Stoune, John Williams, Thomas Peron, or Thomas Rowland (let alone the objectively more culpable Jonathan Prive, Andrew Goldberg, or Adalberto Guardado).

It is worth noting that in recent, high-profile cases subject to great public scrutiny, defendants with far more egregious conduct have received far more lenient sentences than that which was imposed upon Dr. Kopp at his previous sentencing. Ghislaine Maxwell – who was convicted of the completed (in contrast to Dr. Kopp's attempted) offense of transporting numerous minors for sex, who facilitated the abuse of countless minors over the course of years, who herself abused some of her own victims, and who faced a maximum sentence of life imprisonment – received a sentence of 240 months. 1:20-cr-00330-AJN [NYSDC] at dkt. 670. R. Kelly, who likewise enticed, abused, *and* assaulted numerous minors over the course of years,

was sentenced to 360 months. 1:19-cr-00286-AMD [NYEDC] at dkt. 304. Jerry Harris, convicted under §2423 for enticing numerous minors and sexually assaulting at least one of his victims, was sentenced to 144 months. 1:20-cr-00637 [ILNDC] at dkt. 62.

Dr. Kopp's counsel has searched in vain for a single instance of a life sentence imposed for conduct like Dr. Kopp's. Generally, sentences in excess of 20 years involve prolonged abuse of genuine victims, multiple offenses, and/or recidivist offenders. *See, e.g., United States v. Trader*, 981 F.3d 961 (11th Cir. 2020) [life sentence]; *United States v. McCall*, 699 F. App'x 452, 453-54 (6th Cir. 2017) [same]; *United States v. Kemache-Webster*, 497 F. App'x 339, 341-42 (4th Cir. 2012) [same]; *Handlon v. United States*, No. 2:16-cv-813-FtM-29UAM, 2019 U.S. Dist. LEXIS 80112 (M.D. Fla. May 2, 2019) [same]; *United States v. Castaneda*, 997 F.3d 1318, 1322 (11th Cir. 2021) [420 months]; *United States v. Telles*, 18 F.4th 290, 295 (9th Cir. 2021) [302 months]; *United States v. Mills*, 843 F.3d 210, 212-13 (5th Cir. 2016) [300 months]; 2:15-cr-14010-JEM [FLSDC] at dkt. 47 [292 months]; *United States v. Matthews*, No. 06-14069-CR, 2020 U.S. Dist. LEXIS 146553, at *2-4 (S.D. Fla. May 11, 2020) [262 months]. The Eleventh Circuit has previously gathered examples of sex cases with lengthy determinate sentences wherein each defendant undeniably engaged in more egregious conduct than Dr. Kopp. *United States v. Irey*, 612 F.3d 1160, 1219-21 (11th Cir. 2010) [gathering cases]. It is possible there has *never* been another first-time §2422(b) defendant in a notional victim case who has been

sentenced to life-in-prison. Dr. Kopp's conduct, as loathsome as this Court may find it, does not warrant such dramatically harsher treatment than the other equally or more loathsome defendants compiled here.

## III.

## A SENTENCE IN EXCESS OF 20 YEARS WOULD BE SUBSTANTIVELY UNREASONABLE AND GROSSLY DISPROPORTIONATE TO THE OFFENSE COMMITTED.

A sentence in excess of 20 years is not just inappropriate here under §3553(a), but would also be substantively unreasonable given the conduct for which Dr. Kopp has been convicted. Indeed, such a sentence would make this the rare case where the sentence, merely by nature of its severity, violates substantive and procedural due process. In order to impose a sentence greater than 20 years, this Court would necessarily need to ignore (or unjustifiably discount) the many instances of lighter sentences for more serious offenders cited above.[4] That is, this Court would be "commit[ing] a clear error of judgment in considering the proper factors," specifically §3553(a)(6). *See United States v. De Andre Smith*, 967 F.3d 1196, 1215 (11th Cir. 2020). By imposing a sentence above 20 years, the Court must either be ignoring unwarranted sentencing disparities or improperly emphasizing a factual element of Dr. Kopp's case in order to elevate the appropriate punishment, giving "an unreasonable amount of weight to any pertinent factor." *United States v. Abdulmutallab*, 739 F.3d 891, 908 (6th Cir. 2014); *see also United States v. Killen*, 729 F.

---

[4] For this reason, an Equal Protection violation would also result.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

App'x 703, 718 (11th Cir. 2018) [effective life sentence did not recognize sentencing disparities and was therefore unreasonable].

Given Dr. Kopp's age, a sentence higher than 20 years will amount to a life sentence, and any such sentence will not be "well below the statutory maximum penalty" and thus not "an indicator of a reasonable sentence." *United States v. Dougherty*, 754 F.3d 1353, 1362 (11th Cir. 2014). And a life sentence, if one is imposed, is "the second most severe punishment known to the law," one that, by its very nature, exceeds any determinate sentence that might be imposed. *United States v. Kirby*, 938 F.3d 1254, 1258 (11th Cir. 2019). A sentence higher than 20 years would also greatly exceed the maximum sentence that could have been imposed had Dr. Kopp actually engaged in the state offense that served as the predicate crime for his §2422(b) charge. *See* Fla. Sta. 800.04(4)(b); 775.082(d) [setting a maximum term of imprisonment for second degree felonies of 15 years].

Not only would a sentence in excess of 20 years be substantively unreasonable and violate Due Process, but any such sentence would likely, and a life sentence would certainly, violate the Eighth Amendment. The Constitution, after all, forbids "extreme sentences that are grossly disproportionate to the crime." *Graham v. Florida*, 560 U.S. 48, 87 (2010) (Roberts, J. concurring). A proportionality analysis begins by comparing "the gravity of the offense and the harshness of the penalty" and includes consideration of, for example, "a particular offender's mental state and motive in committing the crime, the actual harm caused to his victim or to society by his

conduct, and any prior criminal history." *Ibid*. If that threshold is cleared, a court must then perform an intrajurisdictional comparison with other cases in the jurisdiction and an interjurisdictional comparison with cases in other jurisdictions. *Ibid*.

Here, any such analysis, should a reviewing court be required to perform it, would assuredly reveal that a sentence for Dr. Kopp in excess of 20 years, let alone a life sentence, is grossly disproportionate to the offense of which he has been convicted. Section 2422(b) envisions a life sentence as the statutory maximum, reserved for the very worst offenders. As proved above, Dr. Kopp is far from the worst offenders convicted of §2422(b). To the contrary, his conduct is readily comparable to offenders who have received mandatory minimum, or near-minimum, sentences.

The Seventh Circuit has held that a ten-year sentence for a first-time §2422(b) offense involving a notional victim is not grossly disproportionate. *United States v. Nagel*, 559 F.3d 756, 764-65 (7th Cir. 2009). A sentence of more than 20 years (let alone life imprisonment) would, of course, demand a very different analysis and likely a different conclusion. And, contrary to this Court's previous suggestion that the notional nature of the victim here can be "discounted" (*see* dkt. 77 at 59-60), under Eighth Amendment analysis, "attempts are less serious than completed crimes." *Solem v. Helm*, 463 U.S. 277, 293 (1983). It cannot be ignored that at no point during Dr. Kopp's commission of the instant offense was any minor ever actually at risk (or

even involved).

A life sentence for Dr. Kopp would place him in the same category as murderers, arsonists, kidnappers, recidivist rapists, and career criminals. *Id.* at 298-299. It would, as shown above, result in him being sentenced more harshly than many offenders "who have committed more serious crimes." *Id.* at 303. And it would violate the Eighth Amendment.

## IV.

**A SENTENCE IN EXCESS OF 20 YEARS WOULD BE CONTRARY TO THE OBLIGATIONS OF THE UNITED STATES TO GERMANY AND ITS CITIZENS UNDER ARTICLE 7 OF THE INTERNATIONAL COVENANT ON CIVIL AND POLITICAL RIGHTS.**

**A.** **Relevant International Law**

On December 10, 1948, the United Nations General Assembly passed (by a vote of 48-0) Resolution 217, more commonly known as the Universal Declaration of Human Rights (UDHR). Article 5 of The Universal Declaration provides as follows:

> **Article 5.**
>
> No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

Although the Universal Declaration was aspirational in nature, i.e., it did not create any judicially enforceable rights, it quickly gave rise to conventions and treaties that did create such rights. The first of these was the European Convention for the Protection of Human Rights and Fundamental Freedoms (1950) (more commonly known as the European Convention on Human Rights), which was the first major

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

accomplishment of the Council of Europe. The European Convention on Human Rights created the European Court of Human Rights (ECHR), which is responsible for interpreting the Convention and adjudicating disputes between and among the member states of the Council of Europe. The preamble to the European Convention specifically references the Universal Declaration of Human Rights, and Article 3 of that Convention provides:

**ARTICLE 3 – Prohibition of torture**

> No one shall be subjected to torture or to inhuman or degrading treatment or punishment.[5]

The Universal Declaration and the Convention were followed by the International Covenant on Civil and Political Rights (ICCPR) which was adopted by the United Nations General Assembly on December 16, 1966 (G.A.Res. 2200A (XXI). It entered into force on March 23, 1976, pursuant to Article 49 of the Covenant. The Federal Republic of German signed the Covenant in 1968 and ratified it in 1973. The United States signed the Covenant in 1977 and ratified it in 1992. Put most simply, both Germany and the United States are States Parties to the Covenant.

As States Parties to the Covenant, both Germany and the United States have, *inter alia*, the obligations described in Article 2 of the Covenant:

> 1.      Each State Party to the present Covenant undertakes to respect and to ensure to all individuals within its territory and subject to its jurisdiction the rights recognized in the

---

[5]  Identical language can be found in Article 4 of the Treaty of Lisbon, also known as the "Charter of Fundamental Rights of the European Union." (2000/C 364/01).  This treaty was enacted, at least in part, to avoid the possibility of inconsistencies between the caselaw of the European Court of Human Rights and the European Union's Court of Justice.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

present Covenant, without distinction of any kind, such as race, colour, sex, language, religion, political or other opinion, national or social origin, property, birth or other status.

2.      Where not already provided for by existing legislative or other measures, each State Party to the present Covenant undertakes to take the necessary steps, in accordance with its constitutional processes and with the provisions of the present Covenant, to adopt such laws or other measures as may be necessary to give effect to the rights recognized by in the present Covenant.

Among the rights recognized and protected are those described in Article 7 of the Convention:

### Article 7

No one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment.

**B.      A Sentence of Life Imprisonment Cannot Be Imposed for *Any* Comparable Crime in the Member States of the European Union or the Council of Europe.[6]**

In 1977, The German Federal Constitutional Court ruled that sentences of life imprisonment, without the possibility of parole, violated the constitutional principle of human dignity.[7] This holding was followed by courts in Italy (1987) and France (1994), both of which found that sentences of life without parole violated their constitutions because of the fundamental character of the right to be considered for release and the cruelty of forcing an offender to live without hope of release.

The principles expressed in these three cases were relied upon, and reached

---

[6]  The Council of Europe has 47 member states, including all of the countries of the European Union.

[7]  Bundesverfassungsgerich [BVERFG][Federal Constitutional Court] 1977, 45 BVerfGE 187 (Ger.).

their ultimate expression in 2013, when the European Court of Human Rights (ECHR) handed down its decision in *Vinter v. United Kingdom*, 2013 – III Eur.Ct. H.R. 317, 66069/09 (2013). In *Vinter*, the ECHR expressly held that Article Three of the European Convention on Human Rights prohibited the imposition of a sentence of life imprisonment without parole. According to the ECHR, such a sentence constituted "inhuman or degrading treatment or punishment." To reach this conclusion, the *Vinter* court considered resolutions from the Council of Europe, customary international criminal law, including the Rome Statute of the International Criminal Court, European Union Law, and the laws of the contracting states for the Council of Europe. Significantly, the *Vinter* court also looked to the law of the United States, more specifically, the decision of the Supreme Court in *Graham*, *supra*.

The first and most immediate consequence of *Vinter* was that it was no longer permissible to impose a sentence of life imprisonment without parole in any of the 47 member states of the Council of Europe. The second consequence is that other conventions and treaties that had looked to and tracked the Convention for their language – such as the ICCPR - now had a definitive statement regarding the illegality of such sentences. The third, and more subtle consequence, is that the European Court of Human Rights had recognized that the illegality of a sentence of life imprisonment without parole was more than just one court's interpretation of language in one Convention – it was a matter of customary international law.

1
2

**C.**     **Had He Been Sentenced in Germany, Dr. Kopp Would Have Received a Sentence of No More Than 10 Years.**

3

4

5

Plainly, had Dr. Kopp been convicted of this offense in Germany, he could not be sentenced to life imprisonment without parole, based on *Vitner*. The only

6

7

offenses that presently carry a life sentence in Germany are offenses in which a death occurs, and certain *jus cogens* offenses such as planning a war of aggression or high

8

9

10

treason. Even in such cases, the offender is eligible for parole after serving 15 years in prison.

11

12

13

In practice, however, Dr. Kopp's sentence in Germany would be much closer to – although still less than – the sentence recommended by the Government, and

14

15

certainly nothing in excess of ten years. This is because in Germany, the *actual* sexual abuse of a child (as opposed to the attempted sexual abuse of a notional child) carries

16

17

a maximum punishment of ten years imprisonment:

18

**Section 176**

19

**Sexual Abuse of Children**

20

21

22

(1) Whoever performs sexual acts on a person under 14 years of age (child) or has the child perform sexual acts on them incurs a penalty of imprisonment for a term of between six months and 10 years.[8]

23

24

Of course, Dr. Kopp is not being sentenced in Germany. But as a German

25

citizen, he has certain rights under both German law and international law – even if

26

he is being sentenced in the United States. And one of those rights is the right not to

27

28

---

[8]  German Criminal Code, Section 176 (http://www.gesetze-im-internet.de/englisch_stgb/englisch_stgb.html#p1647), last visited July 12, 2022.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

1  be subjected to "cruel, inhuman or degrading punishment or treatment."

2
3  **D.**    **International Law – Specifically, the ICCPR – Prohibits a Sentence in Excess of 20 Years Here.**

4
5         Although it is not often that Federal Courts of the United States are called

6  upon to rely on and apply principles of international law in their decision making, it

7  is certainly permissible where appropriate. It is also necessary when the international

8  law in question creates a binding obligation upon the United States. *See*, *e.g.*, *Roper v.*

9  *Simmons*, 125 S.Ct. 1183 (2005); *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004); *Olympic*

10 *Airways v. Husai*, 540 U.S. 644 (2004).[9] Thus, the ICCPR, having been ratified by the

11 United States, is a binding obligation on its courts if it is self-executing or if Congress

12 has enacted implementing statutes. *See Medellin v. Texas*, 552 U.S. 491, 504-505

13 (2008).

14
15        The ICCPR is not self-executing and the rights guaranteed by it have not yet

16 been the subject of Congressional legislation. *See Sosa*, *supra*, 542 U.S. at 735; "U.S.

17 reservations, declarations and understandings, International Covenant on Civil and

18 Political Rights," Art. III (1); 138 Cong. Rec. S4781-01 (daily ed. April 2, 1992).

19 Nevertheless, the ICCPR "does bind the United States as a matter of international

20 law." *Ibid*. That obligation is not meaningless. Here, it means that the United States,

21 and by extension this Court, are bound by the ICCPR not to impose a sentence in

22 violation of international law. And a sentence of life imprisonment (without parole)

---

[9]  More generally, see: Van Schaack, Beth, International Law in the United States Legal System: Observance, Application, and Enforcement, 45 Santa Clara L. Rev. 807 (2005).

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

would clearly and indisputably violate international law. So too would any sentence that amounts to "cruel, inhuman or degrading" punishment. For this Court to impose such a sentence in flagrant disregard of the United States' obligations to other nations would be to willfully and purposefully violate the promise this nation has made to its international neighbors.

**V.**

## <u>SEVERAL OF THIS COURT'S PREVIOUS FACTUAL FINDINGS CANNOT BE MADE ANEW.</u>

At Dr. Kopp's previous sentencing, this Court made three factual findings that were not supported by the evidence. Dr. Kopp objects to those findings being made anew now and contends that the government has not shown (and cannot show) by clear and convincing evidence that these facts are true.

First, Dr. Kopp has never engaged in sexual activities with any minor, and the government has not presented reliable evidence that he has. Dr. Kopp's reference to other incidents in his discussions with the undercover officer were mere puffery that lack any corroboration whatsoever. Although he made the statements, they were nothing more than braggadocio intended to reassure the "father" of the notional victim, and it cannot be shown by clear and convincing evidence that Dr. Kopp ever actually engaged in any prior misconduct. That Dr. Kopp engaged in this offense conduct and traveled to meet the minor does not constitute sufficient evidence that he has done so before. *See* dkt. 77 at 65-66.

Second, there is no evidence in the defense's possession that Dr. Kopp

responded to the dark web "advertisement" "within moments," as this Court has previously stated. *Id.* at 61:14. The presentence report only describes Dr. Kopp as "answer[ing] the advertisement via instant message." Dkt. 50 at ¶15. Even that characterization, to which Dr. Kopp has objected, does not suggest a particular timeframe for Dr. Kopp's response. And the discovery produced to the defense does not indicate when (or even how) the chats began.[10]

Finally, the evidence is not that Dr. Kopp intended to override the notional victim's will. Rather, like several of the defendants cited in this brief, Dr. Kopp repeatedly expressed an interest in engaging in sexual activities only with the minor's consent (and repeatedly inquired as to her willingness to participate in the activities described). Of course, a minor cannot legally consent to sex. But to the extent that this Court described Dr. Kopp's interest in "forcible sex" as a description of forced sex on an unwilling victim (dkt. 77 at 63), the chats in which Dr. Kopp engaged bely that suggestion. It is true that those chats demonstrate an interest in BDSM, submission, and pain. But those activities, when performed between consenting adults, constitute normal sexual interests. And so any suggestion that Dr. Kopp wished to force the notional minor to perform against her will is contrary to the evidence and plainly unsupported by clear and convincing evidence.

---

[10]  Dr. Kopp's counsel has conferred with the government, which indicated that there are videos that show the timing of the chat messages. The government, which was under the impression the videos were already in counsel's possession, is currently working to produce those videos to the defense. Dr. Kopp maintains this factual objection unless and until he receives evidence corroborating the government's allegation regarding the timing of the chat; of course, he will withdraw his objection if the evidence bears out the government's factual account.

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## VI.

### A $250,000 FINE WOULD BE SUBSTANTIVELY UNREASONABLE AND CONSTITUTIONALLY EXCESSIVE.

At Dr. Kopp's previous sentencing, this Court imposed, in addition to a life sentence, a maximum fine of $250,000. Should this Court again be considering such a fine, Dr. Kopp hereby objects on statutory and constitutional grounds. In setting a fine amount, this Court is required to consider the factors set forth in 18 USCS Appx §5E1.2, including any "pertinent equitable consideration." *United States v. Hernandez*, 160 F.3d 661, 665 (11th Cir. 1998). Here, Dr. Kopp has nearly exhausted his savings procuring the representation he has needed to assist in his case. If he is sentenced to a life sentence (or the equivalent thereof), the imposition of a $250,000 fine will punish him only by ensuring he will be able to fund no further legal assistance. That is, to the extent Dr. Kopp has meritorious claims to pursue in this Court or above, such an exorbitant fine will prevent him from zealously pursuing those claims. Such imposition of a fine would be far more reasonable if Dr. Kopp is to, at some point, live outside a federal penitentiary. But if that is not to occur, then a fine in the amount of $250,000 serves only to prevent him from seeking his legitimate legal recourses. It also far exceeds the average fine imposed in §2422(b) cases. *See* Ex. A. For that reason, such a high fine amount, at least when paired with such a lengthy term of imprisonment, will "result in manifest injustice." *Id.* at 666.

## VII.

### CONCLUSION

DR. KOPP'S SUPPLEMENTAL SENTENCING MEMORANDUM
*United States v. Kopp*;
Case No. 6:17-cr-00159-PGB-DCI-1

This Court has made clear that it views Dr. Kopp's conduct as "heinous, atrocious, unfathomable and abominable." *See*, *e.g.*, dkt. 116 at 9. That may be so. But it is not the first case this Court, or other district courts, have sentenced wherein the defendant's conduct can be so described. When viewing this case in light of those others, and when considering the sentences imposed in those other cases, a sentence of 20 years is manifestly reasonable. Any higher sentence would plainly create a dramatic sentencing disparity between Dr. Kopp and more culpable defendants who received less onerous sentences. There is simply no reasonable way to view Dr. Kopp as a more dangerous or more egregious offender than some of those defendants cited herein who received determinate (and, in some instances, below-20-year) sentences. A sentence of 240 months is lengthy, reflects the seriousness of this crime, and, given his age and health, still very likely dooms Dr. Kopp to die in prison. It also, however, recognizes that there are far more extreme sets of facts than those here. It also pays some deference to the fact that Dr. Kopp is a German citizen who, through his own misfortune, is being punished in a country that is not his own. A twenty-year sentence is appropriate and is what both parties request be imposed here.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, P.C.**

Dated: July 13, 2022       By: /s/ David J. Cohen, Esq.
                                          DAVID J. COHEN, ESQ.
                               Attorneys for Defendant **Meinrad Kopp**

# EXHIBIT A

## Case Report:

### Kopp
1 count of 2G1.3 - Transportation of Minors for Sex in Middle District of Florida (18 U.S.C. §2422(b))

### Case Summary

|  | Case count | Avg Sentence | Med Sentence | % Below FSG | AVG Fine |
|---|---|---|---|---|---|
| **National** | 1,273 | 143 | 120 | 21% | $1,534 |
| **11th Circuit** | 325 | 156 | 120 | 22% | $1,912 |
| **Middle Florida** | 108 | 165 | 120 | 18% | $4,907 |

# Sentences Imposed

Trend or Cumulative
*by Various Geographies*

## Average Sentences

FILTERS: Nationwide, 11th Cir., Middle Florida, Lead Guideline=2G1.3 - Transportation of Minors for Sex, Primary Statute of Conv.=182422b, National n=1,273, District n=108, Circuit n=325



The chart above reflects the average sentences from fiscal years 2006 through and including 2018 cumulatively for offenders sentenced under the indicated Guideline(s). The data are limited by the filters indicated, and are derived from the U.S. Sentencing Commission's published datafiles.